**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| RICKY J. JOHNSON, | : | CIVIL ACTION NO. |
| GDC ID # 1124129, | : | 2:14-CV-00173-RWS-JCF |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| FORSYTH CNTY. BD. of COMM'RS, | : | PRISONER CIVIL RIGHTS |
| MAJ. TOM WILSON, | : | 42 U.S.C. § 1983 |
| TED PAXTON, Former Sheriff, | : | |
| UNKNOWN F.C.S.O. DEPUTIES, | : | |
|     Defendants. | : | |

**MAGISTRATE JUDGE'S NON-FINAL**
**REPORT AND RECOMMENDATION**

The Court reviewed the original 42 U.S.C. § 1983 complaint (Doc. 1) filed by

Plaintiff—formerly an inmate at the Forsyth County Detention Center ("FCDC") in

Cumming, Georgia, who is now incarcerated at Ware State Prison in Waycross,

Georgia—and ordered that Plaintiff's three access-to-courts claims be allowed to

proceed, but deferred service of process to allow Plaintiff to supplement his complaint.

(Doc. 6).  Plaintiff has now done so.  (Doc. 7).

I.    **The Legal Framework**

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a

person acting under color of state law deprived him of a right, privilege, or immunity

secured by the Constitution or laws of the United States.  *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  A complaint is frivolous when it "has little or no chance of success"—for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process."  *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted).  To have some chance of success, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives."  *Id.* at 678-79.  To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 679.

2

## II.   **The Named Defendants**

In his original complaint, Plaintiff raises three access-to-courts claims and identifies the following Defendants: (1) the Forsyth County Board of Commissioners ("the Board"), (2) Maj. Tom Wilson, (3) former Forsyth County Sheriff Ted Paxton, and (4) unknown Forsyth County Sheriff's Office ("FCSO") Deputies.  (Doc. 1).

In his supplemental complaint, Plaintiff raises four additional claims: (1) medical deliberate indifference, (2) placement in Maximum Isolation ("Max Iso") in retaliation for exercising his right of access to the courts, (3) disciplinary retaliation for filing inmate grievances, and (4) the conditions of his confinement in Max Iso constituted cruel and unusual punishment (Doc. 7 at 3-11); and he seeks to add ten additional Defendants: (1) current Forsyth County Sheriff Piper, (2) Capt. Smith, (3) Lt. Fee, (4) Sgt. Hughes, (5) Deputy Gay, (6) Deputy Hobbs, (7) Deputy Cole, (8) Correct Health (the medical service provider at the FCDC), (9) Nurse Tanya LNU of Correct Health, and (10) North Atlanta Surgical Associates ("Surgical Associates") and its doctors.  (*Id.* at 2, 13-17).  The special considerations that impact the potential liability of many of the Defendants are discussed in greater detail below.

### A.   **The Forsyth County Board Of Commissioners**

A claim against the Board acting in its official capacity is in effect a claim

AO 72A
(Rev.8/82)

against Forsyth County.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (stating that an official-capacity suit generally is "only another way of pleading an action against an entity of which [the] officer is an agent," and that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity").  Forsyth County may be held liable for an alleged violation of Plaintiff's constitutional rights if it "had a custom or policy that constituted deliberate indifference to [a] constitutional right," which custom or policy "caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Graham*, 473 U.S. at 166 (stating that "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law"); *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*) (noting that a § 1983 plaintiff may establish an unconstitutional policy by identifying "either (1) an officially promulgated . . . policy or (2) an unofficial custom or practice . . . shown through the repeated acts of a final policymaker").

But in Georgia, a Sheriff, not a County Board of Commissioners, sets the policies for the Sheriff's Office, including the policies for the control and supervision of the County Jail and its personnel and inmates.

[I]n Georgia, because the sheriff is not a county employee the county is

precluded from controlling or affecting the sheriff's office or its personnel. Ga. Const. art. IX, § 2, ¶ 1(c)(1); *Grech*, 335 F.3d at 1333; *Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 396 S.E.2d 903, 903 (1990). The county plays no role in creating the sheriff's powers and duties or in making personnel or policy decisions. *See Grech*, 335 F.3d at 1333. The duties of the sheriff are set by statute, and the county commission has no authority to divest him of those duties. O.C.G.A. § 15-16-10; *Chaffin v. Calhoun*, 415 S.E.2d 906, 907 (1992). Furthermore, because deputies are employees of the sheriff and not the county, the sheriff is responsible for and has authority over his deputies. O.C.G.A. § 15-16-23; *Grech*, 335 F.3d at 1336; *Brown v. Jackson*, 470 S.E.2d 786, 787 (1996). Thus, under Georgia law, the county "does not, and cannot, direct the Sheriff . . . [on] how to hire, train, supervise, or discipline his deputies, what policies to adopt, or how to operate his office. . . ." *Grech*, 335 F.3d at 1347; *see also Duffey v. Bryant*, 950 F. Supp. 1168, 1174 (M.D. Ga. 1997) ("It is well-settled law in Georgia that a county and its commissioners are without authority over the sheriff or his deputies.").

*Cassells v. Hill*, No. 1:07-cv-2755-TCB, 2010 U.S. Dist. LEXIS 120337, at *30-31 (N.D. Ga. Nov. 8, 2010) (citations altered).

To the extent that Plaintiff has a claim against Forsyth County for the denial of medical care, he may proceed against the Forsyth County Sheriff in his official capacity, which is in effect a claim against the County because the Sheriff acts as an arm of the County in providing medical care to inmates at the FCDC. *See Cipriani v. Fulton Cnty.*, No. 1:07-CV-0069-CAP, 2008 U.S. Dist. LEXIS 111784, at *7 (N.D. Ga. Nov. 18, 2008) (dismissing official capacity claims against the sheriff and two deputies as redundant because "[t]o the extent that the plaintiff is alleging failure to

5

render immediate medical care against [Sheriff] Freeman [and his deputies] in their official capacities, these claims are properly brought against Fulton County, which has been named as a defendant in this action"). Plaintiff has not named Forsyth County as a Defendant here. But because he properly seeks to add current Forsyth County Sheriff Piper as a Defendant, the Board is due to be dismissed as redundant.[1]

## B. Former Forsyth County Sheriff Paxton And Current Sheriff Piper

### 1. Eleventh Amendment Official-Capacity Immunity From Claims For Damages Or Other Retrospective Relief

When a Georgia Sheriff functions as an arm of the State, he enjoys Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against him in his official capacity. *See Purcell v. Toombs County*, 400 F.3d 1313, 1325 (11th Cir. 2005) (concluding that a Georgia Sheriff "functions as an arm of the State [not the County] when promulgating policies and procedures governing conditions of confinement" at a county jail, and, therefore, the Sheriff was

---

[1] *See Reilly v. Campbell*, No. 4:12cv304-RH/CAS, 2013 U.S. Dist. LEXIS 25172, at *1 (N.D. Fla. Feb. 25, 2013) ("In Florida, a county sheriff is a constitutional officer separate and apart from the Board of County Commissioners. The county sheriff typically operates the county jail. The defendant . . ., in his official capacity as the Sheriff of Leon County, operates the Leon County jail. For claims like the plaintiff's, arising from policies in force at the Leon County jail, the proper official-capacity defendant is the Sheriff, not the Board of County Commissioners. The plaintiff has alleged no facts indicating that the Board of County Commissioners enacted the policies at issue or had the capacity to do so.").

6

"entitled to Eleventh Amendment immunity from [a] suit [for money damages] in his official capacity").

The plaintiff in *Grech*, for example, "brought a § 1983 action. . . . alleg[ing] that his constitutional rights were violated when he was arrested in 1998 pursuant to a 1985 bench warrant that the [Clayton County] Sheriff's Office failed to remove from" Georgia's Criminal Justice Information System ("CJIS"). *Grech*, 335 F.3d at 1328. The plaintiff alleged that

> defendant Clayton County's 'failure to ensure adequate training, policies, procedures, practices, and customs regarding the use of the GCIC [("Georgia Crime Information Center")] Computer System constituted a pattern or practice of deliberate indifference and led directly and foreseeably to [his] arrest' . . . . [and] that Clayton County had a custom and policy of permitting errors in warrant information to occur and to remain on the CJIS systems and of failing to prevent invalid criminal warrants from being on those systems.

*Id.* In ultimately deciding that the plaintiff could not sue Clayton County for these alleged violations, the *Grech* court noted that "Georgia law points to the conclusion that sheriffs are not county policymakers as to their law enforcement functions," *id.* at 1343, but it was still necessary to "consider the particular law enforcement conduct of the sheriff in issue, which is the sheriff's entry and validation of warrants on the CJIS systems and his training and supervision of employees in that regard." *Id.* at 1344.

7

The court concluded that the sheriff was not a county policymaker with respect to the specific function at issue.

> In Georgia, a county has no authority and control over the sheriff's law enforcement function. Clayton County does not, and cannot, direct the Sheriff how to arrest a criminal, how to hire, train, supervise, or discipline his deputies, what polices to adopt, or how to operate his office, much less how to record criminal information on, or remove it from, the CJIS systems involved in this case. Instead, the sheriff acts on behalf of the State in his function as a law enforcement officer and keeper of the peace in general and in relation to the CJIS systems in particular.

*Id.* at 1347 (footnote omitted).  In short, "the Clayton County Sheriff is not a county policymaker under § 1983 for his law enforcement conduct and policies regarding warrant information on the CJIS systems or the training and supervision of his employees in that regard."  *Id.* at 1348.  Thus, to the extent that, as in *Grech*, the former and current Forsyth County Sheriffs are not county policymakers for purposes of Plaintiff's allegations, under the Eleventh Amendment they are immune in their official capacities from Plaintiff's claims for damages or other retrospective relief.

### 2.    <u>The Limitations On Eleventh Amendment Immunity</u>

#### a.    <u>The Provision Of Medical Care</u>

On the other hand, "every district court that has addressed th[e] issue has held that a Georgia sheriff acts as an arm of the county when providing medical care."

8

*Robinson v. Integrative Det. Health Servs.*, No. 3:12-CV-20 (CAR), 2014 U.S. Dist. LEXIS 41688, at *43 (M.D. Ga. Mar. 28, 2014); *see Trammell v. Paxton*, No. 2:06-CV-193, 2008 U.S. Dist. LEXIS 108528, at *49 (N.D. Ga. Sept. 29, 2008) (O'Kelley, J.) (explaining that the decisions in *Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1318 (N.D. Ga. 2006), and *Manders v. Lee*, 338 F.3d 1304, 1319, 1322 (11th Cir. 2003) (*en banc*), " 'suggest that in providing medical care for jail inmates, a sheriff acts as an arm of the county' " (quoting *Hooks v. Brogdon*, No. 07-42, 2007 U.S. Dist. LEXIS 72585, at *4 (M.D. Ga. Sept. 29, 2007)), and finding that "to the extent plaintiff asserts claims against Sheriff Paxton for failure to provide medical care to inmates, [the Sheriff] is not entitled to the protections provided to state actors under the Eleventh Amendment"), *aff'd*, 322 Fed. Appx. 907 (11th Cir. 2009).  Thus, Plaintiff may sue the Sheriffs in their official capacities for retrospective relief on his medical deliberate indifference claim.

### b.    The Availability Of Prospective Relief

Plaintiff may also obtain prospective relief from Sheriff Piper[2] on any claim with respect to which Sheriff Piper is liable in his official capacity.  *See Johnson v. Smith*, No. 2:10-CV-236-RWS, 2011 U.S. Dist. LEXIS 9876, at *5 n.2 (N.D. Ga. Feb. 1,

---

[2] As Paxton is the *former* Sheriff, no prospective relief is available against him.

9

2011) ("The Court need not address whether Defendant [Sheriff] Smith acts as an arm of the State regarding the Jail's outgoing mail policies and therefore is entitled to Eleventh Amendment immunity because Plaintiff appears to seek only prospective injunctive relief regarding those policies." (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), to the effect that "the Eleventh Amendment does not bar suit against state officials for prospective relief from continuing violations of federal law," and *Manders*, 338 F.3d at 1324 n.45, to the effect that the Eleventh Circuit "narrowly decide[d] only that Georgia sheriffs in their official capacity act for the State in establishing force policy in the county jail and in training and disciplining their deputies in that regard" (citation altered)).

### c.   Individual-Capacity Liability

The Eleventh Amendment also does not protect a state official from claims brought against him in his individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (holding that "the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983" and that "state officers [are not] absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts" (internal quotations omitted)).  But a supervisor such as a sheriff is individually liable only when he "personally participates

10

in the alleged unconstitutional conduct or when there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting the well-established rule "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability").

This causal connection can be established by showing that (1) the supervisor knew about and failed to correct a widespread history of abuse, or (2) he had a custom or policy that resulted in a constitutional violation, or (3) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotations omitted); *see Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (stating that the "causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action"). But "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone*, 326 F.3d at 1360.

Plaintiff thus also may potentially obtain retrospective relief from either Sheriff in his individual capacity, but only if the conditions set out above are met.

### C.    <u>North Atlanta Surgical Associates</u>

"Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.  The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test."  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *see Kohler v. Garlets*, 578 Fed. Appx. 862, 865 (11th Cir. 2014) (same, citing *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)).   "The state compulsion test limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution."  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (internal quotations omitted).  And to succeed on a claim that "private citizens may be liable as state actors when they conspire with government officials" to violate constitutional rights, " 'the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons.' "  *Kohler*, 578 Fed. Appx. at 865 (internal quotations omitted) (quoting *Harvey*, 949 F.2d at 1133, and affirming Fed. R. Civ. P. 12(b)(6) dismissal of § 1983 complaint).  Finally, the Supreme Court of the United States has held that "[a] defendant cannot be held liable under section 1983 on

12

a respondeat superior or vicarious liability basis," and "every circuit court to consider the issue has extended the holding to private corporations as well." *Harvey*, 949 F.2d at 1129-30 (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), and concluding that a private hospital "cannot be faulted for the conduct of its employees").

Plaintiff may pursue his claim against Surgical Associates only within the foregoing framework. But although Plaintiff refers to Surgical Associates and/or its doctors as the "medical provider" for the FCDC (Doc. 7 at 3-5), he alleges specifically that Correct Health is the "contracted health care provider" at the FCDC (*id.* at 13). Plaintiff cannot have it both ways. The Court finds it implausible that the FCDC has two contracted health care providers. Without more specific evidence indicating that Surgical Associates is also a contracted health care provider for the FCDC, in addition to Correct Health, the Court reaches the reasonable conclusion that Surgical Associates is a private, not a state, actor under § 1983, and that from time to time it provides medical services, i.e., surgery, to FCDC inmates whom FCDC's contracted health care provider, Correct Health, has referred to Surgical Associates for evaluation and/or treatment.

### D.   <u>The Unnamed And/Or Unknown FCSO Officers</u>

As a general matter, fictitious-party pleading is not permitted in federal

13

> court. *See, e.g., New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997). [The Eleventh Circuit has] created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be "at the very worst, surplusage." *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992). In this case, however, [the plaintiff] identified the defendant as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" in his complaint[, which description] . . . was insufficient to identify the defendant among the many guards employed at CCI, and the district court properly dismissed this claim.

*Richardson*, 598 F.3d at 738.  Plaintiff has provided no description of the unknown FCSO officers whom he seeks to sue here that is even as specific as the one that the Eleventh Circuit found insufficient in *Richardson*.

The Court now turns to Plaintiff's specific claims to determine whether Plaintiff has alleged a plausible claim for relief against any Defendants.[3]

## III.   **Plaintiff's Four Additional Claims For Relief (Doc. 7)**

### A.   **Medical Deliberate Indifference: Delay/Denial Of Hernia Surgery**

Plaintiff alleges that he suffered a hernia in October 2008 while housed at the FCDC, at which time the FCDC doctor recommended surgery, but he was "immediately transferred" to the custody of the Georgia Department of Corrections ("GDC").  (Doc. 7 at 3).  Plaintiff notes that since then he has returned to the FCDC

---

[3]As noted above, the Court has already concluded that Plaintiff's access-to-courts claims may proceed, but has not identified which Defendants are potentially liable on those claims.

14

over twenty times to resolve his outstanding criminal charges.  (*Id.*).  He alleges that doctors in 2010 and doctors from Surgical Associates in June 2013 again recommended surgery, but each time, "instead of receiving the surgical procedure," he was returned to GDC custody shortly thereafter, and his scheduled surgery was cancelled.  Indeed, despite a court order issued on June 20, 2013 that he not be returned to the GDC, he was returned there on July 10, 2013.  (*Id.* at 3-4; *see* Doc. 7-1 (Ex. "A")).  Plaintiff alleges that he came back to the FCDC one week later, and then he was returned to the GDC on August 9, 2013, after his trial.  (Doc. 7 at 4).

Plaintiff alleges that Georgia law requires the FCDC to provide him with medical care and that the Board has a duty to allocate sufficient funds for this purpose. (*Id.* at 4-5).  He notes that he has experienced unnecessary pain and suffering over a five-year period, during which time his hernia "became grossly enlarged and painful." (*Id.* at 5).  He asserts that Lt. Fee and Sgt. Hughes arranged for his transfer to the GDC in July 2013 and that Surgical Associates canceled his scheduled surgery "without permission or consultation" with him.  (*Id.*).

The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations omitted).

15

"To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 Fed. Appx. 456, 458 (11th Cir. 2010) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)). "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (internal quotations omitted). "To satisfy the subjective element of [a] deliberate indifference [claim, a] . . . Plaintiff must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted) (noting that subjective knowledge requires that defendant " 'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [] must also draw the inference' " (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added in *Bozeman*)); *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).

"A core principle of Eighth Amendment jurisprudence in the area of medical

16

care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (noting that "prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain"). In determining whether a delay in treatment rises to the level of deliberate indifference, relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

Plaintiff seeks to add Sheriff Piper, Correct Health, Nurse Tanya LNU of Correct Health, Surgical Associates and/or its doctors, Lt. Fee, Sgt. Hughes, and other unknown FCSO officers as Defendants to this claim. (Doc. 7 at 13-14). Plaintiff alleges that Nurse Tanya delayed or denied his hernia surgery and conspired with Lt. Fee and Sgt. Hughes to transfer Plaintiff to GDC custody to prevent him from having the hernia surgery scheduled by the doctors at Surgical Associates. (*Id.* at 13-14; *see id.* at 3-5).

At this stage of the proceedings, the Court accepts "that Plaintiff's hernia constitutes a serious medical need." *See Hetrick v. Salvador*, No. 5:08cv272-

17

SPM/WCS, 2011 U.S. Dist. LEXIS 26463, at *15 (N.D. Fla. Jan. 26, 2011), *adopted by* 2011 U.S. Dist. LEXIS 26470 (N.D. Fla. Mar. 15, 2011).  Yet Plaintiff has only directed specific allegations regarding his medical needs towards Nurse Tanya of Correct Health, Lt. Fee, Sgt. Hughes, and Surgical Associates and/or its doctors. Plaintiff has not presented sufficiently specific allegations against Surgical Associates and/or its doctors to allow his claims to proceed against them.  His allegation—that after he was transferred back to GDC custody in July 2013, Surgical Associates canceled the hernia surgery it had scheduled for him in June 2013—does not constitute a plausible claim that the cancellation is one of those "rare circumstances" that renders Surgical Associates a state actor under the Eleventh Circuit's three-part test or a plausible claim that Surgical Associates and/or its doctors conspired with state actors at the FCDC to deny Plaintiff necessary medical care.  *See supra* Sect. II. C. (discussing potential liability of private actor under § 1983).

In sum, Plaintiff has alleged at least a plausible claim against Lt. Fee, Sgt. Hughes and Nurse Tanya.  Plaintiff may also be able to sustain an official-capacity claim against Sheriff Piper for the denial of constitutionally adequate medical care if he can show that FCDC personnel were implementing an FCDC policy or custom to transfer an inmate in need of medical care to another facility to avoid providing that

18

care.  *See supra*, Sect. II. B. 2. b. (discussing a Georgia Sheriff's potential official-capacity liability).

But, as noted above, Plaintiff has not alleged any action or failure to act by either Sheriff or any other alleged Defendant that would allow his deliberate indifference claim to proceed against them in their individual capacities.  *See supra*, Sect. II. B. 2. c. (discussing a supervisor's potential individual-capacity liability).  And despite Plaintiff's assertion that a Correct Health employee conspired to deny his required surgery, his allegations in general suggest that Correct Health itself was not indifferent to his medical needs, inasmuch as he was recommended for hernia surgery on at least three separate occasions.  Correct Health may not be sued on a theory of supervisory liability.  *See Burton v. Hooks*, CV 314-126, 2015 U.S. Dist. LEXIS 9204, at *8 (S.D. Ga. Jan. 27, 2015) (citing *Kruger v. Jenne*, 164 F. Supp. 2d 1330, 1333-34 (S.D. Fla. 2000) (in turn citing *Powell v. Shopco Laurel, Co.*, 678 F.2d 504 (4th Cir. 1982), to the effect that an "employer [that] provided medical care for state inmates could not be sued under § 1983 on [a] *respondeat superior* theory")).

Plaintiff's medical deliberate indifference claim should therefore be allowed to proceed only against Sheriff Piper, Lt. Fee, Sgt. Hughes and Nurse Tanya LNU of Correct Health.

19

**B.**    **Retaliatory Placement In Maximum Isolation**

Plaintiff alleges that when he was returned to the FCDC on May 1, 2013 for trial, he was offered the choice of (1) having his legal materials placed in the property room, with limited availability for his review of those materials, or (2) being placed in a Max Iso cell and having full access to his materials. (Doc. 7 at 6). Because of the previous loss of his legal materials (*see* Doc. 6 at 4-5), Plaintiff chose the Max Iso option. (Doc. 7 at 6-7). Plaintiff alleges that because of the intolerable conditions in Max Iso, which is reserved for incorrigible or mentally ill inmates and used mainly for disciplinary purposes, the choice he was offered was a form of retaliation for his exercise of his First, Fifth, Sixth and Fourteenth Amendment rights. (*Id.* at 7). Plaintiff seeks to add Sheriff Piper, Capt. Smith, Lt. Fee and Sgt. Hughes as Defendants to this claim. (*Id.* at 14).

Plaintiff has a right to engage in activity protected by the First Amendment without fear of retaliation.

> For an inmate to prevail on a retaliat[ion] . . . claim, he must establish that (1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Once the plaintiff establishes that the protected conduct was a motivating factor behind the harm, the burden of production shifts to the defendant.

AO 72A
(Rev.8/82)

*Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

*Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013).

Plaintiff alleges that Sheriff Piper, Capt. Smith, Lt. Fee and Sgt. Hughes "are responsible for [his] placement in Maximum Isolation confinement and the seizure of his legal materials a second time and/or the alleged 'policy' responsible." (Doc. 7 at 14). This claim should be allowed to proceed against these four Defendants.

### C. Retaliation For The Exercise Of Plaintiff's First Amendment Right To File Inmate Grievances

Plaintiff next claims that in early 2012, when he was filing grievances regarding the alleged violations of his rights at the FCDC, Officers Gay and Hobbs "engaged in a pattern of harassment by making false claims" that Plaintiff had violated various rules of conduct and by writing up charges against Plaintiff, all of which were dismissed. (Doc. 7 at 7-9). He further alleges that upon his return to the FCDC for trial, he was again harassed with false disciplinary charges, written by Officer Cole on July 25, 2013, although he was found guilty of three of the four charges Officer Cole wrote. (*Id.* at 9). Plaintiff sought to appeal those decisions based on alleged procedural violations, but Capt. Smith denied Plaintiff an appeal hearing. (*Id.* at 9-10). Plaintiff seeks to add Sheriff Piper and Officers Gay, Hobbs and Cole as Defendants

21

to this claim. (*Id.* at 15).

Plaintiff has a right to use the FCDC's grievance procedure without fear of retaliation.

> It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement. *See, e.g., Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. *Id.* To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

*Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *see id.* at 1276 n.15 (citing

*Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006), to the effect that the "First

Amendment rights to free speech and to petition the government for a redress of

grievances are violated when a prisoner is punished for filing a grievance concerning

the conditions of his imprisonment"); *but see Moton v. Walker*, 545 Fed. Appx. 856,

860 (11th Cir. 2013) ("A prisoner who claims that the defendant's retaliatory conduct

was writing false disciplinary reports cannot maintain that claim if, after he is given

due process, he is 'convicted' of the behavioral violation alleged in the reports and

there is 'evidence to sustain the conviction.' " (quoting *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011))).

Plaintiff's grievance retaliation claim should be allowed to proceed against Officers Gay, Hobbs and Cole. But Plaintiff has not alleged sufficient facts to proceed against Sheriff Piper on this claim. He has not alleged a policy or custom at the FCDC for which Sheriff Piper is responsible or that the Sheriff participated in any way in this alleged campaign of harassment against him. He has failed to state a plausible claim for relief in this regard against Sheriff Piper.

### D.   Conditions Of Confinement

Finally, Plaintiff alleges that he was subjected to inhumane conditions in the Max Iso unit, including lights that were on 24 hours per day; no recreation, sunlight or fresh air; and no access to puzzles, games or books that are available to inmates housed elsewhere. (Doc. 7 at 11). Plaintiff alleges that he spent over three months in Max Iso and now suffers from various ailments induced by his stay there, including insomnia, migraine headaches, a diminished ability to concentrate, claustrophobia and shortness of breath. (*Id.*). Plaintiff asserts that he would not have needed to choose the Max Iso option if the FCDC had provided him with law library access. (*Id.* at 12; *see* Doc. 6 at 3-4). Plaintiff seeks to add Sheriff Piper, Capt. Smith, Lt. Fee and Sgt.

23

Hughes as Defendants to this claim.  (*Id.* at 16).

For there to be a violation of the Eighth Amendment constituting cruel and unusual punishment, "[f]irst, there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation–one denying the minimal civilized measure of life's necessities.  Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations omitted).  "Negligence does not suffice to satisfy this standard." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  A prison official cannot be found deliberately indifferent unless he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  And "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (noting that "[t]he Constitution . . . does not mandate comfortable prisons") (internal quotations omitted).  But to prevail on an Eighth Amendment challenge to his conditions of confinement, a prisoner "need not await a tragic event before seeking

24

relief, [although] he must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." *Chandler*, 379 F.3d at 1289 (citation and internal quotations omitted).

Plaintiff, however, has failed to make out a plausible conditions-of-confinement claim. "[His] desire for more subdued lighting in the prison dormitories at night constitutes merely a discomfort. It is not . . . the type of extreme deprivation that can be described as cruel and unusual punishment." *Reeves v. Jones*, No. 2:11-CV-1062-TMH [WO], 2012 U.S. Dist. LEXIS 52457, at *4, 5-6 (M.D. Ala. Mar. 20, 2012) (noting that "Plaintiff complains that the lights in the prison dormitories stay on continuously, making it difficult for him to sleep[, but h]e acknowledges . . . that the lights cannot be completely turned off because it would be too dark (causing obvious security and safety issues)"), *adopted by* 2012 U.S. Dist. LEXIS 51952 (M.D. Ala. Apr. 13, 2012); *see also Nichols v. Head*, No. 5:10-CV-71 (HL), 2010 U.S. Dist. LEXIS 112134, at *3-4 (M.D. Ga. Oct. 21, 2010) (concluding that claim of inadequate lighting in prison cell did not "amount[] to any type of 'extreme deprivation' necessary to make [out] a conditions of confinement claim under the Eighth Amendment" (citing *Chandler*, 379 F.3d at 1294-95)).

Plaintiff also has failed to make out an Eighth Amendment claim regarding the

25

lack of outdoor exercise and/or recreation during his three months in Max Iso. *See Wilson v. Blankenship*, 163 F.3d 1284, 1287, 1292 (11th Cir. 1998) ("no clearly established constitutional law required that [pre-trial detainee] have immediate access to outdoor exercise" during his "brief" confinement from October 1 through December 17);[4] *see also Whisman v. Buice*, No. 5:10-cv-503 (CAR), 2012 U.S. Dist. LEXIS 22894, at *3 (M.D. Ga. Feb. 23, 2012) ("The Eleventh Circuit has not recognized an absolute right to outdoor exercise during pretrial detention. . . . [And] because Plaintiff does not allege any physical injury, his claim is barred by the Prison Litigation Reform Act.").[5] Finally, Plaintiff's alleged lack of access to games, puzzles and books during his three-month stay in Max Iso also does not amount to an extreme deprivation of "the minimal civilized measure of life's necessities."  *See Taylor*, 221 F.3d at 1257. Plaintiff's conditions-of-confinement claim should be dismissed.

---

[4]The same substantive standards apply to Plaintiff's conditions-of-confinement claim regardless of whether he was a convicted prisoner or a pretrial detainee during the time period at issue. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (noting that although "[c]laims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause . . . ., the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees"); *see also Williams v. Scott*, 433 Fed. Appx. 801, 803 (11th Cir. 2011) (same).

[5]"Limitation on recovery.  No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

AO 72A
(Rev.8/82)

IV.   **Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's claims be

**ALLOWED TO PROCEED** against the following Defendants:

1.     his three access-to-courts claims, in which he seeks both damages and injunctive relief (*see* Doc. 6), against former Sheriff Paxton in his individual capacity and current Sheriff Piper in both his individual and official capacities;[6]

2.     his Sect III. A. medical deliberate indifference claim against Sheriff Piper in his official capacity and against Lt. Fee, Sgt. Hughes and Nurse Tanya LNU;

3.     his Sect. III. B. First Amendment retaliation claim against Sheriff Piper, Capt. Smith, Lt. Fee and Sgt. Hughes; and

4.     his Sect. III. C. First Amendment retaliation claim against Officers Gay, Hobbs and Cole.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Section III. D. conditions-of-confinement claim and the remaining Defendants—the Forsyth County Board of Commissioners, Major Wilson,[7] North Atlanta Surgical Associates and/or its doctors, Correct Health, and unnamed and unknown FCSO and/or FCDC officers—be

---

[6]Plaintiff has sufficiently alleged FCDC policies regarding the denial of his right of access to the courts to potentially hold one or both Sheriffs liable in his or their official and/or individual capacities.  (*See* Docs. 1, 6).

[7]Because Plaintiff has not alleged that Major Wilson participated personally in the alleged violations of his constitutional rights and because it is recommended that Plaintiff's official capacity claims be allowed to proceed against the final policymakers at the FCDC, the former and current Forsyth County Sheriffs, Major Wilson should be dismissed from this action.

AO 72A
(Rev.8/82)

**DISMISSED** from this action.

**SO RECOMMENDED** this <u>10th</u> day of <u>March</u>, 2015.

　　　　　　　　　　 <u>/s/ *J. CLAY FULLER*　 　</u>
　　　　　　　　　　 J. CLAY FULLER
　　　　　　　　　　 United States Magistrate Judge

28