IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| RICKY J. JOHNSON, | : | CIVIL ACTION NO. |
| GDC ID # 1124129, | : | 2:14-CV-00173-RWS-JCF |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FORSYTH CNTY. BD. of COMM'RS, | : | PRISONER CIVIL RIGHTS |
| MAJ. TOM WILSON, | : | 42 U.S.C. § 1983 |
| TED PAXTON, Former Sheriff, | : | |
| UNKNOWN F.C.S.O. DEPUTIES, | : | |
|     Defendants. | : | |

## ORDER

Plaintiff has sued numerous Defendants on several claims, which he raises in his initial (Doc. 1) and supplemental (Doc. 7) complaints. The Magistrate Judge's Non-Final Report and Recommendation ("Report") (Doc. 8) recommends (1) allowing Plaintiff's three access-to-courts claims to proceed against the former and current Sheriffs of Forsyth County, Sheriffs Paxton and Piper, respectively; (2) allowing Plaintiff's medical deliberate indifference claim to proceed against Sheriff Piper and three other individual Defendants; (3) allowing Plaintiff's two retaliation claims to proceed against Sheriff Piper and six other individual Defendants; and (4) dismissing Plaintiff's conditions-of-confinement claim and the remaining

Defendants. (Report at 27-28; *see* Doc. 6). Plaintiff objects. (Doc. 11). Plaintiff's motion for an extension of time to file his objections (Doc. 10) is **GRANTED**.

In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of those portions of the Report to which Plaintiff objects, and has reviewed the remainder of the Report for plain error. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

I. **Plaintiff's Objections**

    A. **The Conditions of Confinement Claim**

Plaintiff first objects that he has stated a plausible claim for relief regarding the conditions of his confinement in Maximum Isolation ("Max Iso") at the Forsyth County Detention Center ("FCDC") during a period of approximately three months. (Doc. 11 at 2-7). The Report summarizes Plaintiff's claim in this regard as follows:

> Plaintiff alleges that he was subjected to inhumane conditions in the Max Iso unit, including lights that were on 24 hours per day; no recreation, sunlight or fresh air; and no access to puzzles, games or books that are available to inmates housed elsewhere. (Doc. 7 at 11). Plaintiff alleges that he spent over three months in Max Iso and now suffers from various ailments induced by his stay there, including insomnia, migraine headaches, a diminished ability to concentrate, claustrophobia and shortness of breath. (*Id.*). . . . Plaintiff seeks to add Sheriff Piper, Capt. Smith, Lt. Fee and Sgt. Hughes as Defendants to this claim. (*Id.* at 16).

2

(Report at 23-24). The Report finds that given the short duration of Plaintiff's Max Iso detention, the conditions there did "not amount to an extreme deprivation of 'the minimal civilized measure of life's necessities.' " (*Id.* at 25-26 (quoting *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000))).

Plaintiff argues that "[s]ome courts have held constant illumination unconstitutional." (Doc. 11 at 3). He asserts that his claim "involves high intensity lighting" in his Max Iso cell "for 24 hours per day for over three months, at over 150 watts." (*Id.* at 4). Although there do not appear to be any decisions in Plaintiff's favor in this Circuit, courts in other Circuits have deemed the issue that Plaintiff raises at least worthy of factual development beyond the frivolity review stage, and some have granted relief on such claims. *See, e.g., Obama v. Burl*, 477 Fed. Appx. 409, 411-12 (8th Cir. 2012) (reversing 28 U.S.C. § 1915A dismissal of plaintiff's claim that "the constant lighting in isolation caused [him] inability to sleep, emotional distress, and constant headaches"; remanding to district court for further consideration of the claim; and citing *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996), to the effect that there is "no legitimate penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination").

3

Plaintiff also argues that being "locked in a windowless cell approximately six feet by nine feet (a small bathroom) without being permitted to go outside for exercise or fresh air" for more than 90 days constitutes cruel and unusual punishment. (Doc. 11 at 5); *see Delaney v. DeTella*, 256 F.3d 679, 681, 683-84 (6th Cir. 2001) (affirming—because "exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being"—denial of qualified immunity to prison guards on inmate's claim that "for just over 6 months . . . [he] was denied all out-of-cell exercise"; but noting that the length of time without the opportunity for exercise is critical in assessing the constitutionality of the denial).

Plaintiff's objections to the Report's recommendation to dismiss his conditions-of-confinement claim are well-taken, and that claim will be allowed to proceed with respect to the alleged constant illumination in his Max Iso cell and the alleged complete denial of opportunities for out-of-cell exercise for more than 90 days.

### B. The Corporate Medical Defendants

Plaintiff next objects to the recommended dismissal of Correct Health and North Atlanta Surgical Associates ("Surgical Associates") with regard to his medical

4

deliberate indifference claim. (Doc. 11 at 7-11). With respect to Surgical Associates, the Report states:

> [A]lthough Plaintiff refers to Surgical Associates and/or its doctors as the "medical provider" for the FCDC (Doc. 7 at 3-5), he alleges specifically that Correct Health is the "contracted health care provider" at the FCDC (id. at 13). Plaintiff cannot have it both ways. The Court finds it implausible that the FCDC has two contracted health care providers. Without more specific evidence indicating that Surgical Associates is also a contracted health care provider for the FCDC, in addition to Correct Health, the Court reaches the reasonable conclusion that Surgical Associates is a private, not a state, actor under [42 U.S.C.] § 1983, and that from time to time it provides medical services, i.e., surgery, to FCDC inmates whom FCDC's contracted health care provider, Correct Health, has referred to Surgical Associates for evaluation and/or treatment.
> . . . .
> [Plaintiff's] allegation—that after he was transferred back to [Georgia Department of Corrections] custody in July 2013, Surgical Associates canceled the hernia surgery it had scheduled for him in June 2013—does not constitute a plausible claim that the cancellation is one of those "rare circumstances" that renders Surgical Associates a state actor under the Eleventh Circuit's three-part test or a plausible claim that Surgical Associates and/or its doctors conspired with state actors at the FCDC to deny Plaintiff necessary medical care.

(Report at 13, 18). With respect to Correct Health, the Report states:

> [D]espite Plaintiff's assertion that a Correct Health employee conspired to deny his required surgery, his allegations in general suggest that Correct Health itself was not indifferent to his medical needs, inasmuch as he was recommended for hernia surgery on at least three separate occasions. Correct Health may not be sued on a theory of supervisory liability.

5

(*Id.* at 19).

Although the Report recommends that Plaintiff's medical deliberate indifference claim be allowed to proceed against Sheriff Piper and three others, including a Correct Health employee (*id.*), Plaintiff objects that "[i]t is clear from the policies and procedures . . . in the FCDC inmate handbook that authority over virtually all medical decisions w[as] conferred upon the 'facility physician' " (Doc. 11 at 11).  Plaintiff argues that "[w]hether that authority is by way of employment or contract [is] irrelevant to the fact that liability or some part of it is included with that authority."  (*Id.*).  Plaintiff seeks more time to identify the facility physician and determine "[w]hether he is merely contracted by Correct Health, [Surgical Associates], or the  Detention Center," which "can only be determined upon completion of the discovery process."  (*Id.* at 9).

Even if Plaintiff ultimately identifies the "facility physician," however, he may not sue Correct Health or Surgical Associates on a theory of supervisory liability (*see* Report at 19), although he may be able to sue one or both if he can establish that the facility physician acted pursuant to a custom or policy of either or both.[1]  But

---

[1]*See Lannen v. Broward County Sheriff's Office*, No. 10-61311-CIV-SCOLA, 2013 U.S. Dist. LEXIS 47735, at \*6 (S.D. Fla. Mar. 25, 2013) ("[F]or a private corporation providing medical care to inmates to be liable under § 1983, the plaintiff must satisfy the policy-or-custom

Plaintiff's speculation about such a custom or policy is insufficient to maintain a claim against either entity.[2] His allegations, in fact, suggest just the opposite, i.e., that there was no custom or policy of the FCDC contract health care provider to deny him medical care, inasmuch as he was scheduled for surgery on three separate occasions. The Court does not find it plausible that Correct Health would have a custom or policy of scheduling an FCDC inmate for surgery not once but three times, only to cancel the surgery at the last minute to save money, as Plaintiff suggests. Plaintiff's objections to the dismissal of Correct Health and Surgical Associates are therefore overruled.

## C. The Forsyth County Board of Commissioners

Plaintiff next objects to the recommended dismissal of the Forsyth County Board of Commissioners ("Board"). (Doc. 11 at 11-13). Plaintiff contends that

---

requirement. Liability can exist absent a formal written policy or even when the custom is contrary to written policy. That is because a policy can be 'established by showing *a persistent and widespread practice* and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval.' " (citations omitted) (citing *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997), and quoting *German v. Broward County Sheriff's Office*, 315 Fed. Appx. 773, 776 (11th Cir. 2009) (emphasis added in *Lannen*))).

[2]"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

7

because the Board has certain duties with respect to the maintenance and operation of the FCDC, including to provide funding to the FCDC to enable it to offer adequate medical care to its inmates, the Board should not be dismissed from this action. Plaintiff also objects that this Court already allowed his access-to-courts claims to proceed against the Board. (*Id.*). He has repeated this latter objection with respect to the recommended dismissal of Major Wilson and the unnamed officers of the Forsyth County Sheriff's Office ("FCSO"). (*See id.* at 14-17).

The Report recommends dismissal of the Board as redundant because a suit against the Board is in effect a suit against the County, and the County is already the defendant-in-fact to Plaintiff's medical-deliberate-indifference claim against the current Forsyth County Sheriff in his official capacity, which will be allowed to proceed. (*See* Report at 3-6, 8-9). And although Plaintiff's access-to-courts claims have already been allowed to proceed (*see* Doc. 6), the Court has yet to determine against whom they may proceed, and it refrained from doing so previously to give Plaintiff an opportunity to supplement his complaint (*see id.*). Plaintiff's objection is overruled.

### D.   Major Tom Wilson

Plaintiff also objects to the recommended dismissal of Major Tom Wilson

8

because "as Detention Division Commander he is responsible for the policies and procedures of the FCDC." (Doc. 11 at 14). The Report recommends Wilson's dismissal because "Plaintiff has not alleged that Major Wilson participated personally in the alleged violations of his constitutional rights and because it is recommended that Plaintiff's official capacity claims be allowed to proceed against the final policymakers at the FCDC, the former and current Forsyth County Sheriffs." (Report at 27 n.7). Plaintiff speculates that Wilson may be liable as a supervisor for some of the alleged violations of his constitutional rights, but he again refrains from making any specific allegation against Wilson. (Doc. 11 at 14-16). This speculation is insufficient to maintain a claim against Major Wilson. *See Iqbal*, 556 U.S. at 678-79. Plaintiff's objection is overruled.

### E. The Unnamed FCSO Officers

Finally, Plaintiff objects to the recommended dismissal of the unknown and unnamed FCSO officers. Plaintiff asserts that the Eleventh Circuit has directed courts to assist prisoners in identifying proper defendants. (Doc. 11 at 16-17). But "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). This case is no

9

exception. Although Plaintiff is free to name additional Defendants, his objection to the recommended dismissal of the unnamed Defendants is overruled.

## II. Conclusion

The Court **OVERRULES in part** and **GRANTS in part** Plaintiff's Objections (Doc. 11), as set forth above, and **ADOPTS** the Magistrate Judge's Non-Final Report and Recommendation (Doc. 8), with the exceptions noted below.

Plaintiff's claims are **ALLOWED TO PROCEED** as follows:

1. his three access-to-courts claims against former Sheriff Paxton in his individual capacity and current Sheriff Piper in both his individual and official capacities;

2. his medical deliberate indifference claim against Sheriff Piper in his official capacity and against Lt. Fee, Sgt. Hughes and Nurse Tanya LNU;

3. his Max-Iso retaliation claim against Sheriff Piper, Capt. Smith, Lt. Fee and Sgt. Hughes;

4. his disciplinary-report retaliation claim against Officers Gay, Hobbs and Cole; and

5. his conditions-of-confinement claim against Sheriff Piper in his official capacity and against Capt. Smith, Lt. Fee and Sgt. Hughes.

To the extent Plaintiff has raised any other claims, they are **DISMISSED**, and all of the other Defendants—including the Forsyth County Board of Commissioners,

10

Major Wilson, North Atlanta Surgical Associates and/or its doctors, Correct Health, and unnamed and unknown FCSO and/or FCDC officers—are also **DISMISSED**.

The Clerk is **DIRECTED** to submit this matter to the Magistrate Judge for further proceedings.

**IT IS SO ORDERED** this  14th  day of April, 2015.


_____
**RICHARD W. STORY**
United States District Judge