IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

Ricky J. Johnson, Pro se,
GDC # 1124129,
   Plaintiff,

v.

Ted Paxton, et al.,

   Defendants.

Civil Action No.:

2:14-cv-00173-RWS-JCF

Prisoner Civil Rights
42 U.S.C. § 1983

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville
JUL 13 2017
JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

REBUTTAL TO DEFENDANTS RESPONSE TO PLAINTIFFS
OBJECTIONS TO MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION

Defendants opine that "Plaintiffs 117 page set of objections is to lengthy for a point by point response." It is worth noting that the Magistrates R&R is lengthy at 103 _typewritten_ pages produced by a highly skilled legal professional ruling on several complex Constitutional claims involving numerous Defendants. Unsure of what would be expected but do note that I have made my best effort to legibly draft my pleadings and to avoid any frivolous or meritless arguments.

1

Defendants Response appears to be a mere reiteration of their previous arguments and merit a rebuttal.

<u>Point One.</u>   The motion to compel was not properly denied and discovery is incomplete. Defendants explain that the second motion to compel was untimely. The second motion simply corrected the technical denial of the first one for failure to attach the good faith letter, prior to resorting to the Court for assistance in compelling Defendants to comply with their discovery obligations as required under the Federal Rules. Defendants have remained in violation of the Rules of discovery and summary judgement should not be granted until the various discovery disputes, particularly those involving the Hall County Detention Center (H.C.D.C.) grievance attempts/kiosk record, e-mails, video recordings, etc., etc are resolved.

Defendants assertion that the discovery requests is a "wide ranging, fishing-expedition is simply untrue, as is the contention that this is a "nominal damages case." The claims seek damages in excess of $100,000.00 dollars for compensatory & punitive damages. It is worth noting

that Plaintiff made a specific request to amend his suit upon completion of the discovery process to add/delete claims and defendants. This is significant due to the Courts dismissal from this action all John Doe defendants and Major Tom Wilson. Indeed, a timely compliance with the discovery requests could have helped avoid uneccessary litigation.

Point Two.   Defendants continue to insist to this Court that they were merely honoring a D.O.C. production request when they sent Plaintiff to Augusta State Medical Prison (A.S.M.P.) in direct violation of a Superior Court Order forbidding them to do so. Again and again Plaintiff has brought to the Courts attention that there is no D.O.C. production request. This is, plain and simple, a lie made under penalty of perjury in a federal proceeding. And Defendants continue to propogate this blatantly false assertion in their present response. Indeed, in the R&R the Magistrate determined " Plaintiff rightly points out that there is no

G.D.C. production order in the record to serve as a basis for Defendants explanation as to why they took him to A.S.M.P. on July 11, 2013, in defiance of a Superior Court of Forsyth County order." (Doc. 104, pg. 66, par. 2)

In light of this determination by the Court, it is appropriate to ask - why are Defendants still lying about it? Are they trying to lie a G.D.C. production request into existence? Due to Defendants continued reference to a D.O.C. production request Plaintiff respectfully requests that the Court require Defendants to produce the document or, in the alternative, the full text of all e-mails or information that resulted in Plaintiff's transfer to A.S.M.P.

<u>Point Three.</u>   Defendants opine that they "acted within their ordinary job responsibilities" and that their "discretionary authority" is not genuinely in dispute". (Def. Response, pg. 4). Yes it is.

Defendants do not have "discretionary authority" to violate lawful court orders nor do they act "within their ordinary job responsibilities"

4

when they do so.

The evidence record in this case shows three (3) lawful court orders issued in the Superior Court of Forsyth County. The first, issued on October 16, 2009 ordered Defendants to allow immediate access to the Forsyth County law library " to conduct legal research related to his non-attorney represented case(s) appeal(s)." (See, Doc. 88, Ex. 19, at pp. 53) Forsyth Superior Court did not issue this Order for no reason — but upon good cause shown. Those causes will be shown at trial if this case proceeds.

The second Order, issued on February 9, 2011 and ordered Defendants to locate the seized legal material at issue in this case "using any and all methods required" to locate "and return to MR. JOHNSON any and all materials so taken" (See, Doc. 88, Ex. 23, at pp. 57)

In Defendants "statement of facts" they explain to this Court "the paperwork was given to a Hall County Sheriff's deputy..." (See, Doc. 80, Att #10, pg. 2, par. 6) (Wilson Decl. at par. 10). As explained in the objection, there is no evidence of any transport officer receiving the material. But more importantly the Court Order specifically

instructed Defendants to return the paperwork to Plaintiff - not some Hall County transport deputy. The order is clear & unambiguous and Defendants simply ignored it.

The third Order instructed Defendants that "[Plaintiff] shall not be returned to the Department of Corrections at this time..." (See, Doc. 88, Ex. "12", at pp. 41). This Order was issued on June 20, 2013. On July 11, 2013 Defendants did exactly what the Court ordered them not to do, and returned Plaintiff to Dept. of Corrections. To add insult to injury they lie to this Court about honoring a D.O.C. production order as an excuse for doing so.

Three lawful court orders issued and each one disregarded and violated. Under Georgia law, no person has authority - discretionary or otherwise - to violate lawful court orders. See, Britt v. State, 282 Ga. 746 (2007) (If a person to whom a court directs an order beleives the order is incorrect the remedy is to appeal, but absent a stay, he must comply promptly with the order). See also, Maness v. Meyers, 419 U.S. 449, 458-59 (1975) (Such orders must be complied with promptly and completely).

In their Response Defendants opine that "....this Court has no jurisdiction to enforce an Order from some other court (Def. Response, Pg. 12, n. 6). However, this Court is authorized to take judicial notice of other Court records that are related to matters before it. Again, those Orders are submitted as evidence that Defendants were well aware that their actions were wrong, and that the law was "clearly established" by the Court by issuing the orders. Put another way, Defendants were not acting with discretionary authority when violating lawful court orders and do not enjoy qualified immunity when doing so.

Point Four.   Defendants rely on Lake v. Skelton, 840 F.3d 1334 (11th 2016) for the argument that the Sheriff acts as an arm of the State in providing medical care for inmates. But Skelton did not result in overruling Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) (en banc) cited by this Court in allowing this claim to proceed. (See, Doc. 8, pg. 9, par. 1). Additionally, Defendants have

7

failed to provide any of their insurance policies or contracts with medical care providers North Atlanta Surgical Associates or Correct Health. These documents are necessary to determine responsible parties and whether those policies result in waivers of 11th Amendment immunity if at all. It is well established summary judgement should not be granted until discovery is completed fairly and adequately. <u>Jones v. City of Columbus, Ga.</u>, 120 F.3d 248, 253 (11th Cir. 1997).

Plaintiff submits that it is the en banc decision in Manders that controls the 11th Amendment immunity as to the medical issue in this case.

<u>Point Five.</u>   Defendants response regarding the P.L.R.A.'s exhaustion requirement ignores the Acts "built in exception" as explained in the U.S. Supreme Court decision <u>Ross v. Blake</u>, 136 S.Ct. 1850 (2016). Defendants persist in the fallacy that nothing prevented Plaintiff from "mailing in" his grievance appeals. Although they refer to the F.C.D.C. Rules & Regulations Handbook, those

rules make no provisions for "mailing in" any grievances or grievance appeals for inmates who were boarded out to Hall County Detention Center (H.C.D.C.) or returned to Dept. of Corrections (D.O.C.) as occurred in this case. In a effort to mislead the Court, Mr. Tom Wilson explains that inmates outside of F.C.D.C. can "file a grievance or grievance appeal by sending it to the Forsyth County Jail. (See, Doc. 80, Wilson Decl., pg. 4-5, par 8) But that isn't in the Handbook. This is simply the result of Defendants creating facts to fit the most recent court rulings. It is noteworthy that in their response Defendants recite the Handbooks grievance procedure and appeal process but conveniently omit these relevant portions: (1) That all grievances " shall be in writing, ON THE STANDARD INMATE GRIEVANCE FORM..." and (2) "Failure to follow this procedure may invalidate any grievance, appeal, or legal recourse you might otherwise feel you may be entitled to." (See, Wilson Decl., Ex. B-16, pgs. 25-26, Doc. 80) for the complete text). This omission is a blatant attempt to mislead the Court.

Defendants reliance on <u>Smith v. LeBlanc</u>, No. 1:07-cv-124 WLS, 2011 WL 854809 in support of summary judgement is misplaced because in that case the Court remanded for further review and specific factual

findings regarding "whether after Plaintiff's transfer out of Dougherty County Jail he had a grievance procedure available..." See also, <u>Miller v. Pryor</u>, 315 Fed.Appx.149,150 (11th Cir. 2001) ( Court finds factual inquiry must be undertaken to determine whether Plaintiff "had a grievance procedure available at his new institution). Here, the Court can make that determination with the facts in evidence now. The answer is no. There is no available grievance procedure at H.C.D.C. and Defendants readily admit it in their response by claiming "filing with some other agency does not trigger the grievance process at F.C.S.O.(See, Response, pg.9, n.3)

    Defendants assertion that " all credibility disputes should be resolved against Plaintiff" is frivolous in light of the facts of this case. They breach their discovery obligations, swear under penalty of perjury that they "honored a D.O.C. production request", and once caught in that lie, submit an unproduced e-mail that merely authorized the transfer to A.S.M.P., provided only a portion of the grievance regarding the transfer and omitting the response of Defendant Smith, omit the grievances filed on the H.C.D.C.

kiosk, and now omit relevant portions of the grievance process from their present pleading. These acts are not consistent with the actions of a credible party, particularly a party that has repeatedly disregarded lawful court orders as these Defendants have. Under the facts in the record of this case Defendants have not been very credible at all. Indeed, this Court would be authorized in imposing sanctions pursuant to Rule 11 under these circumstances.

<u>Point Six.</u>   Defendant Paxton suggests to this Court that it should "lay aside" previous judicial decisions of the Federal Courts including this circuit that allow naming high level administrators as Defendants until the parties are identified. Plaintiff has requested the video recording of the booking area on January 18, 2011 when he was returned from court and his legal material seized. This request was made for the purpose of identifying the responsible F.C.S.O. deputy. Defendants have refused to provide it. In the Superior Court Order at issue in this case the court made specific reference to the utilization of video recordings to locate the paperwork. (See, Doc. 88,

Ex. 23, at pp. 57) If Defendant Paxton does not want to be held responsible for the seizure of the paperwork there is a simple solution. Identify the responsible officer(s).

Under these circumstances, the Eleventh Circuit has observed that it is reasonable for a pro se prisoner to name such "high ranking prison officials" who "are in a position to identify the individuals who are actually and directly responsible" for the alleged constitutional violations; even if these prison officials were not actually and directly involved, (As Paxton asserts here), they may assert their noninvolvement and identify the responsible parties. Brown v. Sikes, 212 F.3d 1205, 1208-09 (11th Cir. 2000).

Defendants ignore the causal connection of the violation due to Paxton's lack of policy regulating the seizure, loss/destruction of inmates property. See, Rivas v. Freeman, 940 F.2d 1491 (11th Cir. 1991) (Sheriff liable for lack of policy)

Instead of requesting this Court to "lay aside" the above cited precedents in the summary judgement analysis they should instead comply with their discovery obligations and identify the responsible

parties, and until that time summary judgement should not be granted.

<u>Point Seven.</u>   Defendants claim that "medical professionals obviously deemed it appropriate to wait several months before performing hernia surgery." (Response, pg. 11, par. 9) However, not one of the physicians involved are named, much less provided any statement to that effect. What actually occurred is the physicians reacting to circumstances created by the actions of Defendants, and rescheduling the procedure as expeditiously as possible under the circumstances they were confronted with.

Defendants somehow believe it is relevant that a G.D.C. nurse wrote in her notes "came here for my hernia to be checked." But again, Defendants have failed to obtain a statement from the nurse involved. While Plaintiff does not recall making such statement, he does recall the F.C.S.O. deputies informing him that was the purpose of the trip. This was in response to informing the Deputies his appointment was for laporoscopic surgery at Northside

Hospital and that there is a Superior Court order forbidding any transfer to D.O.C. It was the F.C.S.O. transport officers who informed Plaintiff he was going to his medical appointment. Only after it became clear transport was not going to Northside Hospital did the transport officers inform Plaintiff he was going to A.S.M.P. Nevertheless, the fact Plaintiff was aware of why he was transported to A.S.M.P. is irrelevant.

Defendants also claim that they were "acting to transport Plaintiff to a medical appointment" (Response at pg. 13) As noted above, the Magistrate already determined that there is no D.O.C. production order in the record -- contrary to Defendants sworn statement that they honored one when they made the transfer in violation of the lawful court order, which is in the record.

Instead of correcting this falsehood, as they are legally and ethically required to do, Defendants are doubling down by claiming that there was a "medical appointment" at A.S.M.P. The evidence that is in the record shows that on July 11, 2013, the day of the

transfer, there was no appointment for medical services at A.S.M.P.

Plaintiff refers the Courts attention to the D.O.C. Medical Consultation form at Doc. 88, Ex. 17, at pp. 51. This form clearly shows that it was not until the day <u>after</u> the transfer, July 12, 2013 that Plaintiff was "Approved For ASMP Services" by Deborah Jasper of G.D.O.C. Utilization Management. It was not until July 16, 2013 that any evaluation occurred. Put another way, there was no "medical appointment" at A.S.M.P. pending on the day of the transfer as Defendants mislead this Court into believing. The fact that there was no medical appointment is also reflected by A.S.M.P. medical staff inquiring of <u>Plaintiff</u> why he was there, to which he replied "to get my hernia checked."

The record evidence in this case shows only one medical appointment scheduled for Plaintiff. It was for a laporoscopic hernia repair procedure at Northside Hospital on July 12, 2013 at 6:45 A.M. and may be found in the record at Doc. 88, Ex. 11, at pp. 40. Pursuant to the Superior Court order, this is the only appointment Defendants were

authorized to transport Plaintiff to, and as previously noted, they did not have "discretionary authority to violate that order and therefore, are not entitled to qualified immunity.

It is also noteworthy that Defendants failed to respond to the objection on the ground that there is no evidence from any licensed medical professional saying Plaintiff received "minimally adequate medical care" under the circumstances of this case. There is evidence of what one medical expert determined was required - and that was the laporoscopic procedure prescribed by Dr. Louis Goehring

## Conclusion

Upon consideration of all of the facts, legal arguments and evidence in the record of this case Defendants are not entitled to summary judgement.

Respectfully submitted this 7th day of July, 2017 by,

*Ricky J. Johnson*

Ricky J. Johnson, #1124129
3404 Kent Farm Dr.
Millen, Ga. 30442

## Certificate of Service

This is to certify that a copy of Plaintiffs Rebuttal has been sent via regular U.S. Mail with adequate postage affixed to ensure delivery to: Jason C. Waymire, Williams, Morris & Waymire, L.L.C., Bldg. 400, Suite A, 4330 South Lee St., Buford, Georgia, 30518

Respectfully submitted this 7th day of July 2017, by,

*Ricky J. Johnson*

Ricky J. Johnson, #1124129
3404 Kent Farm Dr.
Millen, Ga. 30442

— Legal Mail —

Ricky J.
GDC #110...
3404 Kent Farm Dr
Millen, Ga 30442

Jenkins Correctional Center
3404 Kent Farm Dr, Millen, GA 30442
The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened or inspected. If the writer raises a question or problem over which this facility/center has jurisdiction you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.

Office of the Clerk
United States District Court
Northern District of Georgia
Room 201
121 Spring St., SE
Gainesville, Georgia 30501

CLEARED SECURITY
JUL 12
U.S. Marshals Service
Gainesville, GA

