## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| RICKY J. JOHNSON, | : | CIVIL ACTION NO. |
| GDC ID # 1124129, | : | 2:14-CV-00173-RWS-JCF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHERIFF DUANE PIPER, | : | PRISONER CIVIL RIGHTS |
| in his individual and official capacities, | : | 42 U.S.C. § 1983 |
| TED PAXTON, Former Sheriff, | : | |
| CAPT. SMITH, LT. FEE, SGT. HUGHES, | : | |
| OFFICERS GAY, HOBBS & COLE, | : | |
| TONYA SIMMONS MARTIN, | : | |
| Defendants. | : | |

## ORDER

The Order and Final Report and Recommendation ("R&R") of Magistrate

Judge J. Clay Fuller (Doc. 104) denies Plaintiff's motions for appointment of

counsel, to compel discovery and to strike Defendants' affidavits (Docs. 72, 76, 99);

and recommends that the motions for summary judgment filed by Simmons-Martin

("Simmons") (Doc. 78) and the Forsyth County Detention Center ("FCDC")

Defendants (Doc. 80) be granted and that Plaintiff's claims be dismissed. Plaintiff

has filed lengthy objections. (Doc. 115 ("Objs.")).

In reviewing a Magistrate Judge's R&R, the district court "shall make a de

novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the face of the record" in order to accept the recommendation. Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b). In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Plaintiff objects and has reviewed the remainder of the R&R for plain error. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

## I.    <u>General Matters</u>

Plaintiff's claims concern his treatment while housed at the FCDC. The Court

2

allowed the following of Plaintiff's claims to proceed:

1.  his access-to-courts claims against former Sheriff Paxton in his individual capacity and against current Sheriff Piper in his individual and official capacities — alleging the denial of access to the FCDC library and the loss of his legal documents, and challenging the FCDC postcard-only policy;

2.  his medical deliberate indifference claim against current Sheriff Piper in his official capacity and against Lt. Fee, Sgt. Hughes and Simmons for denying him the hernia surgery that had been scheduled for July 12, 2013;

3.  his claim that current Sheriff Piper, Capt. Smith, Lt. Fee and Sgt. Hughes retaliated against him by placing him in the FCDC's maximum isolation unit ("Max-Iso");

4.  his claim that Officers Gay, Hobbs and Cole retaliated against him by filing disciplinary reports ("DRs"); and

5.  his conditions-of-confinement claim against current Sheriff Piper in his official capacity and against Capt. Smith, Lt. Fee and Sgt. Hughes regarding the conditions in the Max-Iso unit.

(R&R at 2).

The record indicates that Plaintiff was housed at the FCDC during the following relevant time periods: (1) in 2010: January 12-19 and April 21-May 3; (2) in 2011: March 9-29; (3) in 2012: January 31-February 10 and April 10-May 14; and (4) in 2013: April 30-June 27 and July 22-August 9. (*Id.* at 35). Plaintiff was convicted in the Superior Court of Forsyth County in August 2013 on charges of burglary and theft by taking, and on August 9 he was transferred back to state prison,

3

where he had been serving a sentence for similar crimes committed in Hall County.
(*Id.*).

The Magistrate Judge concludes that Plaintiff's transfer to state prison moots
any claim he may have for prospective relief. (*Id.* at 19-20). Plaintiff objects that
his return to the FCDC "for his pending motion for new trial and outstanding
criminal charges in Forsyth County Superior Court . . . is inevitable," and thus his
claims for injunctive relief regarding the FCDC law-library and postcard-only
policies are not moot. (Objs. at 19-20). He argues that "[b]ecause [his] return to [the
FCDC] is inevitable, and the policies complained of . . . remain, the parties still have
a legally cognizable interest in the outcome." (*Id.* at 22).

As noted below, the Court finds that Plaintiff's claims for prospective relief
are mooted by his transfer to state prison. And although Plaintiff disputes the
Magistrate Judge's conclusions that he failed to exhaust his administrative remedies
with respect to most of his claims (*see, e.g.*, Objs. at 23-41), the Court does not rely
on those conclusions here, with one exception, as noted below.

## II.   **Plaintiff's Access to Courts & First Amendment Claims**

Plaintiff brings access-to-courts claims against former Sheriff Paxton in his
individual capacity and against current Sheriff Piper in his individual and official

4

capacities — alleging the denial of access to the FCDC library and the loss of his legal documents, and challenging the FCDC postcard-only policy.

## A.   The Magistrate Judge's Recommendation

Plaintiff's three access to courts claims concern his lack of access to a law library while housed at the FCDC; the confiscation and loss, in January 2011, of papers allegedly proving his innocence of the Forsyth County charges pending against him, on which charges he was convicted in August 2013; and his challenge to the FCDC's postcard-only policy. "In his July 2014 complaint, filed in this action, Plaintiff alleges that because he was denied access to the FCDC law library, his pro se motion to withdraw his guilty plea [in Hall County] was denied, his appeal was denied, and his petition for writ of certiorari was denied as well."[1] (R&R at 47). The Magistrate Judge concludes that "there is no genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies with respect to any of his access-to-courts claims, including his postcard-only claim, other than his request for law library access in April 2012. He has not." (*Id.* at 48). But the R&R does not rely solely on this conclusion, because the Magistrate Judge also concludes that

---

[1]Plaintiff originally brought these access to courts claims in a complaint filed in 2012, which this Court dismissed without prejudice.

"Plaintiff's vague assertions about how things might have been different in his Hall County and Forsyth County criminal proceedings and appeals had he been given access to the FCDC law library do not establish a genuine issue of material fact in this regard." (*Id.* at 49).   The Magistrate Judge also notes that Plaintiff's claim regarding the denial of law library access in 2008 — when he was attempting to withdraw his guilty plea in Hall County — is time-barred, and that the claim also fails because Plaintiff chose to represent himself in those proceedings, and therefore he was not entitled to law library access. (*Id.* at 52).

> The undisputed record shows that during the time period relevant to his Hall County appeal, Plaintiff was housed at the FCDC for only 35 days, from April 10 to May 14, 2012. Although Plaintiff was without counsel in his Hall County proceedings after the denial of his direct appeal on March 6, 2012, he has not shown that he missed a deadline or was unable to develop a viable claim in his *pro se* petition for certiorari review, filed in the Supreme Court of Georgia, based on his lack of access to the law library or to the regular mail. Indeed, Plaintiff acknowledges that, with his mother's assistance, he was able to timely file his petition for certiorari review. (See Doc. 1 at 12).

> [T]he Court may not accept speculation on Plaintiff's part as to how he *may* have been harmed. To survive summary judgment, he was required to provide at least some specific example of how he was *in fact* harmed — such as a legal argument that he could not make because he could not research the relevant law during the time period at issue. Plaintiff has failed to do so. Plaintiff asserts only that had he "not been denied access to the legal library during [his] several transfers and incarcerations[, he] would have succeeded on [his] grievances, appeals,

6

> petitions and suits. At a minimum the odds of success could have been substantially increased." (Pl.'s Decl. ¶ II. 12).

(R&R at 53). "With respect to his Forsyth County criminal proceedings, Plaintiff has not explained how Sheriff Paxton was responsible for the loss of his materials in January 2011 or how the loss changed the course of those proceedings. His bare assertion that the loss mattered is not enough to avoid summary judgment." (*Id.* at 54-55 ("Indeed, Plaintiff admits that he had counsel during that time, and the Court is struggling to understand why the *only* copy of the allegedly crucial lost documents was in Plaintiff's possession, and not his attorney's, to enable his attorney to make a copy for safekeeping and then another copy for Plaintiff.")). Finally, with respect to Plaintiff's postcard-only claim, the Magistrate Judge concludes that the only two Defendants, the former and current Forsyth County sheriffs, enjoy qualified immunity from Plaintiff's claim for retrospective relief. (*Id.* at 56-57).

### B.   Plaintiff's Objections

Plaintiff objects that because he was denied access to the FCDC law library, his *pro se* efforts to do the following failed: "appeal his Hall County conviction, pursue his conditions of confinement in [the] Hall County Detention Center (H.C.D.C.)[ and] civil rights violations in Cherokee County, defend from a civil suit

7

by an insurance company, [and] investigat[e] and identify[] issues involving his attorney(s) in his pending criminal case in Forsyth County Superior Court." (Objs. at 42-43; *see id.* at 43-44 (stating that the Magistrate Judge has overlooked the fact that the existence of the court order he obtained allowing him law library access is prima facie evidence of his need to use the FCDC library)).

Plaintiff also contends that the "continuing violation" doctrine renders timely his claim regarding the denial of access to the FCDC law library in 2008. (*Id.* at 44-45). And he argues that his decision to represent himself in his 2008 Hall County proceedings on his motion to withdraw his guilty plea cannot be counted against him because he was not properly informed of the consequences of refusing the assistance of counsel. (*Id.* at 45). He also notes that the cases he filed in 2010 and 2011 alleging unconstitutional conditions of confinement at the Hall County Detention Center and violations of his civil rights in Cherokee County were dismissed in 2011 due to his failure to keep the Court informed of his current address, which error "[i]t is reasonable to presume . . . he would not have made and [] would have known how" to remedy had he been allowed access to the FCDC law library. (*Id.* at 46).

Plaintiff asserts that the legal material that was confiscated and lost on January 18, 2011 "consisted of receipts, bills of sale, and affidavits of ownership which

8

would have exonerated him at his plea in bar hearing and allow him to make a lawful claim for the return of his property." (*Id.* at 47).   Plaintiff claims that there is a genuine dispute of fact as to whether, *inter alia,* "the legal material would have been relevant to [his] defense in his criminal case." (*Id.* at 48).   Plaintiff expounds at length on his inability to identify anyone other than the Forsyth County sheriffs as responsible for the loss of his legal materials — because, he argues, Defendants have stonewalled his discovery requests seeking to identify the individual FCDC officers responsible. (*Id.* at 48-55).   He also explains why his attorney did not have a copy of the lost materials — Plaintiff "had only recently received this evidence for his case and only after great effort and time were they obtained," and FCDC policy prevented him from sending a copy to his attorney. (*Id.* at 56).

With regard to the postcard-only policy, Plaintiff notes that the exception for legal mail applies only to incoming mail, and "outgoing mail is not considered legal mail." (*Id.* at 58).   The policy states that for items that an FCDC detainee wishes to turn over to his attorney, he should contact his attorney's office and arrange for pickup from the facility.   Plaintiff notes that he encountered just this problem when attempting to mail papers to this Court, and states that "[i]t would be difficult to conceive of a more egregious means of hindering an incarcerated (and presumably

innocent) inmate's access to the Courts than to prevent him from sending legal mail to the Courts, or even an attorney." (*Id.* at 58-59). Plaintiff distinguishes one of the cases cited in the R&R, in which a postcard-only policy was upheld, by noting that in that case a hearing was held and evidence presented on the four-part test established in *Turner v. Safley*, 482 U.S. 78 (1987), whereas Defendants have presented no evidence relevant to the *Turner* test. (*Id.* at 60-61). Plaintiff also notes that an even tougher test, established in *Procunier v. Martinez*, 416 U.S. 396 (1976), controls restrictions on outgoing mail. (*Id.* at 61-62). Finally, Plaintiff contends that he has suffered irreparable harm due to the loss of First Amendment freedoms, including the ability to receive letters from family and friends, write to his attorney or even send documents to the Court. (*Id.* at 62-63).

### C.   Analysis

The Court agrees with the Magistrate Judge that Plaintiff cannot recover on these related claims. Plaintiff's transfer to state prison has mooted his claims for prospective relief. (*See* R&R at 19-20 (noting that it "appears that he has spent no more than 18 days at the FCDC — 6 in September 2014, 8 in February 2015 and 4 in June 2015 — during the 43 months since his Forsyth County convictions" (citing Proof of Custody, Ex. A to Decl. of Chad Evers, Doc. 80-9 at 3-4))). The Sheriffs

enjoy qualified immunity from Plaintiff's postcard-only claims for damages. (*See*

R&R at 55-57). And Plaintiff has not presented any actual evidence of harm

resulting from his alleged denial of access to the courts. Speculation — not founded

on demonstrable facts — will simply not do. As the Magistrate Judge explains:

> Plaintiff may not prevail on his access-to-courts claims without "demonstrat[ing] that the confiscation of his legal materials [or the denial of access to the FCDC law library] resulted in the loss of a nonfrivolous claim — *i.e.*, actual injury." *Miller v. Conway*, 1:12-CV-91, 2013 U.S. Dist. LEXIS 57529, at *20 (N.D. Ga. Mar. 28), *adopted by* 2013 U.S. Dist. LEXIS 57011 (N.D. Ga. Apr. 22, 2013); *see also Dennis v. Schwarzauer*, 496 Fed. Appx. 958, 959 (11th Cir. 2012) ("To assert an access-to-the-courts claim, the plaintiff must possess a non-frivolous, arguable underlying cause of action, the presentation of which was prevented by the defendant. Indeed, *the plaintiff must describe the underlying cause of action specifically enough . . . to show it is more than hope*." (emphasis added)). Plaintiff has not done that. Indeed, his access-to-courts claims rely entirely upon his hope that things could have turned out better. (*See* Pl.'s Decl. ¶ II. 12, Doc. 88 at 15 (arguing that if he had been given access to the FCDC law library, "[a]t a minimum the odds of success could have been substantially increased.")).

(R&R at 49-50 (citations altered); *see id.* at 50-51 (citing *Daker v. Warren*, 660 Fed.

Appx. 737, 741 (11th Cir. 2016) ("For purposes of this appeal, [the court] assumes,

without deciding, that [appellant] demonstrated the inadequacy of the law library and

research materials and the unreasonableness of the restrictions placed on him. But

that is not enough for [him] to avoid summary judgment on his access to courts

11

claim. He must also show that he suffered injury, *i.e.*, that the deficiencies hindered his efforts to pursue a legal claim." (internal quotations omitted))). Based on the foregoing, Plaintiff's objections to the Magistrate Judge's conclusions on his access-to-courts and postcard-only claims are **OVERRULED**.

## III.   **Plaintiff's Medical Deliberate Indifference Claims**

Plaintiff brings medical deliberate indifference claims against current Sheriff Piper in his official capacity and against Lt. Fee, Sgt. Hughes and Simmons for denying him the hernia surgery that had been scheduled for him in July 2013.

### A.   **The Magistrate Judge's Recommendation**

It is undisputed that Plaintiff was scheduled for laparoscopic hernia surgery on July 12, 2013 — as arranged by the FCDC medical department, to be performed at a nearby clinic — but he was taken instead to state prison, where he received no care for his hernia and was then returned to the FCDC on or about July 19, in anticipation of his trial, which took place in early August and concluded on August 8, 2013. Plaintiff was then returned to state prison, where he received hernia surgery on October 3, 2013. (*See* R&R at 63-66, Doc. 88-3 at 59). After concluding that Plaintiff failed to exhaust his administrative remedies with respect to his medical deliberate indifference claims, the Magistrate Judge stated:

12

Plaintiff simply has not demonstrated, with verifying medical evidence, a genuine issue of material fact as to whether — between July 12, 2013, the date of his scheduled, but cancelled, laparoscopic surgery, and the unspecified date in October 2013 when he received hernia surgery at ASMP [Augusta State Medical Prison] — he experienced a worsening of his condition or such severe discomfort as to constitute the unnecessary and wanton infliction of pain, in violation of the Eighth Amendment. . . .

And that Plaintiff received what he describes as a less preferred form of hernia surgery, and the complications that allegedly followed, are not enough for him to recover on his deliberate indifference claim. A prisoner is not entitled to the most advanced medical care available. As long as the care he has received is "minimally adequate," his preference for a different treatment does not give rise to a constitutional claim.

(R&R at 70, 71).

## B.    Plaintiff's Objections

Plaintiff objects that his hernia was well-controlled until April 30, 2013, when he was transferred to the FCDC and denied a bottom bunk, despite being given a bottom bunk profile by the FCDC medical department.  Plaintiff re-injured the hernia climbing up and down to reach his bunk, and he sought treatment for swelling and pain, including difficulties performing excretory functions. (Objs. at 69). Physician Assistant Eric Rose referred Plaintiff to an offsite surgical center for evaluation, where on June 3, 2013 a doctor prescribed laparoscopic surgery due to the pain. (*Id.* at 70).  After Plaintiff was denied the surgery by being transferred first to the Hall

AO 72A
(Rev.8/82)

County Detention Center and then to state prison, and then returned for trial, his attorney requested a trial continuance on August 5 because of Plaintiff's painful condition, but the continuance was denied. (*Id.* at 70-71).

Plaintiff argues that while he "can point to evidence in the record that he was in significant pain during the relevant time period, Defendants have provided no evidence. Indeed, they do not even dispute this fact anywhere in any of their pleadings nor does the R&R refer to any." (*Id.* at 72; *see* Doc. 88-3 at 8-11). Plaintiff argues that Defendants' failure to dispute Plaintiff's subjective reports of pain requires that his testimony on that issue be accepted as true. (Objs. at 73). Plaintiff also disputes that he received minimally adequate care for his hernia in state prison, which he argues is beside the point because he is suing only FCDC officials. (*Id.* at 74). Plaintiff contends that he "suffered permanent scarring that he would not have received had he received his prescribed [laparoscopic] surgery. . . . [and also contends that he] experiences pain even now." (*Id.* at 78).

Plaintiff contends further that there are genuine issues of material fact for trial as to whether Defendant Simmons conspired with the FCDC officials to deprive him of his scheduled laparoscopic surgery, as a cost-saving measure, and failed to send his medical records with him to state prison in order to insure that he would not

14

receive the scheduled surgery while there.  (*Id.* at 79-80).  "Due to the pain,

discomfort and enlargement of the hernia, the [FCDC] physician found it necessary

for Plaintiff to see a specialist who then prescribed a laparoscopic surgical

procedure.  As a result of Defendant Simmons actions, Plaintiff never received his

prescribed surgery." (*Id.* at 81).  Plaintiff identifies a conspiratorial "smoking gun,"

an email sent to Simmons from a Georgia Department of Corrections ("GDC") health

official (Doc. 103-1), which, he claims, reveals that Simmons was involved in

arranging for Plaintiff's transfer to state prison, contrary to what she has sworn

happened.  (Objs. at 82; *see id.* at 83 (stating that the email raises at least "an

inference that Defendant Simmons did play a significant role in arranging Plaintiff's

transfer to A.S.M.P.")).

C.     **Analysis**

It appears undisputed that Plaintiff, suffering from a hernia that had been

aggravated by his failure to receive a bottom bunk profile as ordered by the medical

staff at the FCDC, was scheduled for laparoscopic surgery at a local clinic on July

12, 2013, but instead of receiving the surgery, he was taken to state prison on July

11 and then returned to the FCDC on July 19 for his trial in early August 2013.

These facts, and others noted in Plaintiff's very thorough set of objections, give rise

to genuine issues of material fact for trial on the following issues: (1) whether Plaintiff exhausted his administrative remedies on his medical deliberate indifference claim or, if not, whether the remedies were effectively unavailable to him; (2) whether Plaintiff suffered from a serious medical need that caused him severe pain and other physical problems until his hernia surgery on October 3, 2013 in state prison and thereafter; and (3) whether Lt. Fee and Sgt. Hughes were aware of Plaintiff's medical needs and failed to alleviate his condition, or worse, took steps to actively prevent Plaintiff from receiving the medical care he required.

### 1.    Lt. Fee and Sgt. Hughes

In their brief in support of their motion for summary judgment, Fee and Hughes argue that "it was appropriate in July 2013 for the Sheriff's Office to honor a production request for [Plaintiff] from the Georgia Department of Corrections, which required [his] transfer to Augusta State Medical Prison." (Doc. 80-12 at 3). But, as the Magistrate Judge properly found, there was no such production order. (*See* R&R at 66 ("Plaintiff rightly points out that there is no GDC production order in the record to serve as a basis for Defendants' explanation as to why they took him to ASMP on July 11, 2013, in defiance of a Superior Court of Forsyth County order.")).

16

Fee and Hughes next argue that Plaintiff did not exhaust his administrative remedies because he did not appeal the denial of his grievance regarding his missed hernia surgery appointment (Doc. 80-12 at 5-6), but they cite to a version of Plaintiff's grievance that includes a response from Fee but not a later response from Capt. Smith, which is arguably a response to Plaintiff's appeal of the denial of that grievance (*cp.* Doc. 80-1 at 40 (Defendants' copy of grievance) *with* Doc. 88-3 at 21 (Plaintiff's copy of same grievance)). The issue of administrative exhaustion is a factual one for trial.

Fee and Hughes argue further:

> Plaintiff had a diagnosed hernia condition in **2008** and he spent years in the Georgia prison system. Obviously the hernia was not an emergency medical need, even if the medical need could be classified as "serious" (a point that Defendants do not concede). Accordingly, from an Eighth Amendment standpoint it makes no difference whether the issue was addressed in July 2013 by a doctor in Forsyth County, versus October 2013 at the Augusta State Medical Prison.
>
> Moreover, Plaintiff cannot show deliberate indifference by these Defendants. Defendants Fee and Hughes had no role in deciding about Plaintiff's transfer to Department of Corrections custody, or the hernia medical appointment. Instead, Defendants Fee and Hughes were simply the officers who responded to Plaintiff's post-incident grievance about the transfer to the Department of Corrections.

(Doc. 80-12 at 10; *see* Doc. 116 at 11-12). But Fee and Hughes do *not* dispute,

17

apparently, that Plaintiff was scheduled to have laparoscopic surgery for his hernia on July 12, 2013 — and the surgery was not scheduled at a state prison facility.  As to their argument that they were not involved in the decision to send Plaintiff to state prison rather than to the local clinic for his surgery, Plaintiff points out that Capt. Smith's further response to his grievance regarding the cancellation of the surgery states that "we sent you [to ASMP] for the procedure you requested" (*see* Doc. 88-3 at 32), and "the only names on [the] grievance are Fee, Hughes and Smith."  (Doc. 88-1 at 32).

Finally, Fee and Hughes argue that they are entitled to qualified immunity on Plaintiff's deliberate indifference claim, but a deliberate delay of several months in the treatment of a painful condition that has been diagnosed by a doctor as requiring immediate treatment is not the type of conduct that qualifies a defendant for immunity.  Plaintiff has been unable to produce the surgeon's diagnosis and surgery recommendation, but he has provided a copy of the assessment by Eric Rose at the FCDC recommending a surgical consult for the hernia pain that Plaintiff was experiencing. (*See* Doc. 88-3 at 10).  Although, as the Magistrate Judge points out, verifying medical evidence is the standard for assessing whether a plaintiff has presented sufficient evidence of harm arising from medical deliberate indifference

18

(*see* R&R at 68-71), Plaintiff has presented just enough evidence here to allow his medical deliberate indifference claim to go forward to a trier of fact.

### 2. <u>Sheriff Piper</u>

But, although Plaintiff may be able to recover damages from Fee and Hughes in their individual capacities, he may not recover damages from Sheriff Piper in his official capacity, in which the Sheriff acts as an arm of the State in providing medical care to FCDC inmates. *See Lake v. Skelton*, 840 F.3d 1334, 1342 (11th Cir. 2016) (O.C.G.A. "Section 42-5-2 regulates both the furnishing of 'food' and the furnishing of 'needed medical and hospital attention,' Ga. Code Ann. § 42-5-2, and we draw the same distinction regarding food that the Georgia Supreme Court and the Georgia Court of Appeals have drawn regarding medical care. Although the Georgia Code may not be a model of clarity when it comes to allocating responsibility in the context of corrections, we conclude that the duty to feed inmates—including the denial of an inmate's dietary request—is not delegated by the county but instead is directly assigned by the state." (internal quotations omitted)); *see id.* at 1341 ("The Georgia Court of Appeals has never construed section 42-5-2 to mean that a sheriff acts on behalf of the county when he provides medical care. Instead, the Georgia Court of Appeals, like we do, distinguishes between the duty imposed by section

19

42-5-2 on a county to fund medical care and the duty of a sheriff to provide medical care.").

### 3.   Ms. Simmons

Defendant Simmons argues in her summary judgment brief:

> The record is devoid of any evidence that Defendant Simmons was in any way involved in the transfer of Plaintiff back to the custody of the Georgia Department of Corrections the day before his surgery was scheduled. Indeed, the undisputed record evidence demonstrates that Defendant Simmons received notice of the transfer from jail security staff in the late afternoon prior to the transfer the following morning. At that point, Defendant Simmons cancelled the surgery and contacted the nurse case manager with the Department of Corrections about the pending surgery and faxed the information to the Georgia Department of Corrections as requested.

(Doc. 78-1 at 8 (citation omitted)).  The so-called "smoking gun" evidence to which Plaintiff refers in his objections is nothing of the sort, at least with respect to Simmons.  It is an email from the GDC's CMCC Offender Administrator, Office of Health Services, sent on the afternoon of July 11, 2013, authorizing the Forsyth County Sheriff's Office to transport Plaintiff to ASMP on July 11 or 12, and advising Simmons to "please ensure that the inmate is transported with all medical records test and scan." (Doc. 103-1).  There is no suggestion in this email, or in any other record evidence, that Simmons participated in planning Plaintiff's transfer to state prison

20

to prevent him from receiving laparoscopic surgery scheduled elsewhere on July 12. At most, if the ASMP officials never received Plaintiff's medical records as requested (*see* Doc. 88-3 at 20), Simmons was negligent for failing to send them. There is thus no genuine issue of material fact for trial as to whether Simmons's actions, or failure to act, rose to the level of medical *deliberate* indifference.

## IV.   Plaintiff's Retaliation Claims

Plaintiff claims that current Sheriff Piper, Capt. Smith, Lt. Fee and Sgt. Hughes retaliated against him by placing him in the FCDC's Max-Iso unit and that Officers Gay, Hobbs and Cole retaliated against him by fabricating DRs accusing him of wrongdoing.

### A.   The Magistrate Judge's Recommendation

The Magistrate Judge concludes that Plaintiff

has not shown that he was placed in Max-Iso in retaliation for filing complaints or grievances. FCDC records show that Plaintiff had not filed a grievance previously in almost exactly one year — on May 5, 2012 — and . . . he filed his previous lawsuit against Forsyth County on May 9, 2012, also almost one year before his placement in Max-Iso on May 4, 2013. And Plaintiff has acknowledged that he agreed to be placed in Max-Iso in order to be able to review his extensive legal materials.

(R&R at 78-79). The Magistrate Judge concludes that Plaintiff's Max-Iso retaliation

claim fails because it appears undisputed that he could have left Max-Iso at any time upon his own request, and also based on the lapse in time between the alleged basis for the retaliation and the alleged act of retaliation. (*Id.* at 79-81). The Magistrate Judge further concludes that Plaintiff's DR retaliation claims fail because the claims against Officers Gay and Hobbs are time-barred (*id.* at 90-91) and the claim against Officer Cole lacks the necessary temporal proximity (*id.* at 93).

### B.      Plaintiff's Objections

Plaintiff objects that because he was never previously required to relinquish his voluminous legal materials or go into Max-Iso to maintain access to them — until, that is, he filed suit with this Court — "the evidence supports the conclusion it was done in retaliation for [his] doing so." (Objs. at 111-13). He notes that there is no record evidence, in the form of an affidavit, supporting Defendants' contention that "Plaintiff made a deal with an unnamed supervisor to stay in Max Isolation," and he argues that this lack of evidence should be held against them. (*Id.* at 113-14). "The truth is this. The only agreement was to go to a Max Isolation cell 'for 24 hours . . . to get his legal papers in order.' That's according to the facts in evidence. . . . Then the 24 hours turned into ninety days." (*Id.* at 114). He notes that Defendants never provided examples of "spontaneous combustion of paper, nor did

22

they explain how [his materials were] less of a fire hazard in Max Isolation than in general population." (*Id.* at 115). In sum, "the facts, evidence and inferences drawn from them show that Defendants kept [Plaintiff in Max-Iso] for filing suit about [his] lost legal material, [about] getting beat up by Deputy Sotor, etc. and they understood that the conditions were extremely harsh and unconstitutional." (*Id.* at 116).

Plaintiff also objects that the failure of Defendants to produce the video of Officer Cole's cell search, when the officer allegedly discovered contraband in Plaintiff's cell, precludes summary judgment in Cole's favor. (*Id.* at 93-95). Plaintiff argues that the FCDC Defendants have waived a "temporal proximity" affirmative defense by not raising it in their motion for summary judgment. (*Id.* at 96). Plaintiff contends that the denial of due process in his disciplinary hearings, which the Magistrate Judge acknowledges, "is a genuine material issue for trial." (*Id.* at 98). Noting that two of the disciplinary charges, if upheld, would have had serious consequences for him in state prison, and also noting the small size of the FCDC (200 inmates), Plaintiff argues that "it is very nearly absurd to believe" that the Defendants were "unaware" of what they were doing by retaliating against Plaintiff. (*Id.* at 99).

### C.   Analysis

Plaintiff does not dispute Defendants' assertion that he could have left Max-Iso at any time, had he simply asked to do so.  His claim is really about the Hobson's choice he was given — confinement in Max-Iso or separation from his legal materials.  But the undisputed facts suggest that Plaintiff simply cannot overcome the large lapse in time between the alleged basis for retaliation and the alleged retaliatory acts.  The Magistrate Judge explains:

> Given the undisputed lapse in time of one year and the otherwise non-retaliatory basis for Plaintiff's placement in Max-Iso, as well as the undisputed fact that he could have asked to be returned to general population at any time, there is no genuine issue of material fact with respect to the causation element of Plaintiff's Max-Iso retaliation claim, which requires "a causal relationship between the retaliatory action and the protected speech." *See Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  "To establish causation, the plaintiff must show that the defendant was '*subjectively motivated to discipline*' the plaintiff for exercising his First Amendment rights." *Burns v. Warden, USP Beaumont*, 482 Fed. Appx. 414, 417 (11th Cir. 2012) (emphasis added) (quoting *Mosley*, 532 F.3d at 1278).  But here, Plaintiff does not dispute that Defendants would have allowed him to leave Max-Iso at any time upon his request.  Plaintiff has simply not shown that his Max-Iso placement was based on a subjective motive to discipline him.  *See id.*

> In addition, most of the cases holding that temporal proximity between protected activity and adverse action is evidence of "a causal relationship," i.e., a retaliatory motive, concern lapses in time of days or weeks, not a full year. *See Edmondson v. Bd. of Trs.*, 258 Fed. Appx. 250, 254 (11th Cir. 2007) (noting that delays of 3 months and 3 & 1/2 months are too great to establish causation); *Harrington v. Wells*, 2:13-cv-103, 2015 U.S. Dist. LEXIS 152602, at *20-21 (S.D. Ga. Nov. 10,

2015) (citing cases that involved "close temporal proximity"; but also citing *Smith v. Bell*, 06-60750, 2008 U.S. Dist. LEXIS 29014, at *4 (S.D. Fla. Mar. 31, 2008), *aff'd by Smith v. Belle*, 321 Fed. Appx. 838 (11th Cir. 2009), in which the district court stated that "there can be no assumption that eighteen months after a police officer is called names by an arrestee, that the officer's alleged false testimony at a trial where a defendant is partially acquitted meets the casual connection requirement. There must be a greater temporal proximity or other evidence of a causal connection to link the protected conduct occurring [eighteen] months prior to the adverse action, as would be the case i[n] most retaliation type analyses.")). This Court sees no relevant difference in this regard between the 12-month lapse of time at issue here and the 18-month lapse in *Bell*. As the Eleventh Circuit has stated, a delay of even 3 months is generally too long to establish a causal connection, in the absence of any other evidence of causation, which is absent here.

(R&R at 79-80 (citations altered)). This same analysis applies to Plaintiff's retaliation claims arising from the DRs that he received. The Court also agrees that Plaintiff's DR retaliation claims against Officers Gay and Hobbs are time-barred. And, as the Magistrate Judge has noted, Plaintiff did not raise a due process claim in his prior pleadings (*see* R&R at 92 n.14), and he may not do so now, in response to a motion for summary judgment or in his objections to the Magistrate Judge's R&R. Plaintiff's objections to the Magistrate Judge's conclusions on his retaliation claims are therefore **OVERRULED**.

## V.   **Plaintiff's Conditions of Confinement Claim**

Plaintiff challenges the conditions of his confinement in the Max-Iso unit of the FCDC.

## A.      The Magistrate Judge's Recommendation

The Magistrate Judge has reached the following conclusions regarding Plaintiff's conditions of confinement claim:

> [T]here appears to be no case from the Supreme Court of the United States, the Eleventh Circuit or the Supreme Court of Georgia putting these Defendants on notice that the conditions in Max-Iso violate the Eighth Amendment rights of inmates who spend short periods of time there. Based on the relevant holdings of the Supreme Court of the United States and of the Eleventh Circuit, therefore, Plaintiff's allegations regarding the conditions in Max-Iso do not show a constitutional right "clear enough that any reasonable officer would understand that [the conditions] violate[] that right." *See Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013) (internal quotations omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive [qualified immunity] question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." (internal quotations omitted)).
>
> But even if the Court concludes that Plaintiff has done enough to administratively exhaust his claim regarding the 24-hour illumination in his cell and perhaps also his claim regarding the lack of access to recreation, fresh air and sunlight — and that Defendants do not enjoy qualified immunity from Plaintiff's Max-Iso conditions claims — Plaintiff has failed to present any evidence that these conditions caused him harm. Indeed, Plaintiff has pointed to no evidence in the record, and there appears to be none, that he ever mentioned to anyone at the FCDC or in state prison the symptoms he alleges he experienced as a

26

result of his Max-Iso detention.  Moreover, as noted with respect to Plaintiff's Max-Iso retaliation claim, it is undisputed that Plaintiff could have left Max-Iso at any time, merely by making a request to do so, and thus there is no genuine issue of material fact as to whether Defendants subjectively intended to inflict gratuitous harm upon Plaintiff.  *See Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000) ("there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish").  Because there is no genuine issue of material fact regarding Defendants' intent to punish Plaintiff — i.e., there is no evidence of such an intent — Piper, Fee, Hughes and Smith are entitled to summary judgment on Plaintiff's Max-Iso conditions claims.

(R&R at 102 (citation altered)).

## B.    Plaintiff's Objections

Plaintiff objects that for qualified immunity purposes, the R&R does not analyze his conditions-of-confinement claim based on broad principles of constitutional law or on conduct so egregious that no controlling caselaw is needed. (Objs. at 102).  He cites cases from outside this Circuit in which courts have held that, separately, 24-hour illumination of a prisoner's cell, lack of exercise outside the confines of a prisoner's cell and being housed with mentally ill inmates is unconstitutional.  (*Id.* at 102-05).  Plaintiff notes that the conditions in Max-Iso violated the FCDC's own rules regarding illumination, exercise and recreation.  (*Id.* at 106).  He notes that the Eleventh Circuit has acknowledged that at the summary

27

judgment stage, the only evidence that a *pro se* prisoner can reasonably be expected to produce is his own affidavit — in this case, Plaintiff's sworn statement that he suffered headaches, shortness of breath and other problems involving his reinjured hernia. (*Id.* at 106-07). He notes further that courts have allowed compensation for unconstitutional conditions even in the absence of physical injury. (*Id.* at 106-07).

Plaintiff also challenges the Magistrate Judge's conclusion that he could have left Max-Iso at any time, merely by requesting to do so. Plaintiff states that he "only 'agreed' to go into Max Isolation to regain access to his trial preparation material," which was vitally important to him because, as his age at the time of trial and his 40-year sentence suggest, he "was on trial for his very life." (*Id.* at 110). Plaintiff argues that the choice he was given — Max-Iso or the loss of his trial preparation materials — was an unconstitutional condition, and he did not "voluntarily" go into and remain in Max-Iso, but rather was forced to do so to maintain access to his trial materials. (*Id.* at 111).

## C.   Analysis

Plaintiff asks this Court to view his conditions-of-confinement claims based on broad principles of law, but the Supreme Court of the United States has instructed the federal courts to focus instead on the particular conduct at hand. *See Mullenix*,

28

136 S. Ct. at 308 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.") (citations and internal quotations omitted). Plaintiff also invokes the unconstitutional condition doctrine, but that doctrine is misplaced here, where the enforcement of rules about the amount of material a detainee is allowed to keep in his cell is not unconstitutional. Because the Court is not aware of, and Plaintiff has not pointed to, any caselaw from the Supreme Court of either the United States or Georgia or from the Eleventh Circuit indicating that the conditions of Plaintiff's relatively brief confinement in Max-Iso violated his constitutional rights — and again, because Plaintiff was not *forced* to remain in Max-Iso — his conditions-of-confinement claims fail. And Plaintiff does not contend that he has a claim for prospective relief in this regard that should not be dismissed because he may return to the FCDC. His objections to the Magistrate Judge's conclusions on these claims are **OVERRULED**.

## VI.   Conclusion

For the foregoing reasons, the Magistrate Judge's Final Report and

AO 72A
(Rev.8/82)

Recommendation (Doc. 104) is **ADOPTED IN PART**; Defendant Simmons's motion for summary judgment (Doc. 78) is **GRANTED**; and the Forsyth County Defendants' motion for summary judgment (Doc. 80) is **GRANTED IN PART** on Plaintiff's First Amendment access-to-courts and postcard-only claims, his retaliation and conditions-of-confinement claims and his medical deliberate indifference claim against Sheriff Piper; and the Forsyth County Defendants' motion for summary judgment (Doc. 80) is **DENIED IN PART** on Plaintiff's medical deliberate indifference claims against Lt. Fee and Sgt. Hughes.

IT IS SO ORDERED this 25ᵗʰ day of August, 2017.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

30